In the Matter of the Petition of DANIEL B. TAYLOR, Appellant, to Have the Election for the Incorporation of the Proposed Village of Mamaroneck Declared Illegal.

INCORPORATION OF VILLAGES — METHOD OF VOTING ON PROPOSITION TO INCORPORATE — LAWS OF 1870, CHAP. 291, § 9. The provisions of the act for the incorporation of villages (Laws of 1870, chap. 291, § 9) have not been changed or repealed by the changes in the general election laws, or the laws requiring town elections to be had by means of the official ballot or ballot machines, and still regulate the method of voting to determine a proposition to incorporate a part of a town or parts of towns, not before organized for any purpose.

*Matter of Taylor*, 3 App. Div. 244, affirmed.

(Argued June 9, 1896; decided October 6, 1896.)

APPEAL from order of the Appellate Division of the Supreme Court in the second judicial department, made April 7, 1896, which affirmed an order of the County Court of Westchester county, entered December 28, 1895, upholding and affirming an election held in November, 1895, in parts of the towns of Mamaroneck and Rye, in Westchester county.

The facts, so far as material, are stated in the opinion.

*Charles H. Young* for appellant. A vote for and against the incorporation of a village is an election. (Laws of 1870, chap. 291, §§ 7, 8, 10, 11; Const. of N. Y. art. 2, § 5; *People ex rel.* v. *Bd. of Suprs.*, 139 N. Y. 524; Laws of 1892, chap. 680, § 80; Laws of 1894, chap. 764, § 1.) The express provisions of article 2, section 5, of the Constitution of 1894 were violated in the election in question, in that the ballot used was an open ballot and not a secret one. (Const. of N. Y. art. 1, § 16; Laws of 1870, chap. 291.) The legislature intended, in passing chapter 810 of the Laws of 1895, amending the law of 1892, after the adoption of the Constitution of 1894, to comply with the Constitution and to enact a general law to cover all elections within the state, save those excepted by the Constitution. (Laws of 1890, chap. 262; *In re Vil. of Harrisville*, 49 N. Y. S. R. 288; Laws of 1892, chap. 680, § 83; Laws of 1895, chap. 810; *In re Hickory Tree Road*, 43 Penn. St. 139; *People* v. *Burt*, 43 Cal. 560.) The election in the town of Rye is invalid because the Myers ballot machine was not used in the election. (Laws of 1892, chap. 127; Laws of 1894, chap. 764.) The act of 1895 provides that the town clerk should provide ballots for such an election as the one in question. (Laws of 1895, chap. 810, §§ 83, 86, 87; *People ex rel.* v. *Bd. of Suprs.*, 65 Hun, 484.) As no ballot was provided by the town clerks of Mamaroneck and Rye, the act of 1895 provides an adequate ballot, which was not used in the election in question. (*People ex rel.* v. *Kenney*, 96 N. Y. 294; *Harris* v. *Bd. of Suprs. Niagara Co.*, 33 Hun, 279.) The act of 1870 was not complied with in the election in question, as the ballots were not folded. (R. S. [6th ed.] chap. 6, tit. 1, § 1.) An appeal lies to the Court of Appeals in this proceeding. (Code Civ. Proc. §§ 190, 1357; *Village of Harrisville* v. *Lawrence*, 66 Hun, 305.)

*William Samuel Johnson* for respondent. No appeal lies to the Court of Appeals in this proceeding. (*McAllister* v. *A. P. R. Co.*, 10 N. Y. 353.) The election to determine as to the incorporation of the village of Mamaroneck was con-

ducted in conformity with the laws applicable to the election of town officers in force at the date of the passage of the act for the incorporation of villages, and such laws govern the procedure at such election. (Laws of 1870, chap. 291; 1 R. S. chap. 11, tit. 1, 3; Suth. on Stat. Const. § 257; *Knapp* v. *City of Brooklyn*, 97 N. Y. 520; *In re Vil. of Sing Sing*, 98 N. Y. 454; *Village of Gloversville* v. *Howell*, 70 N. Y. 287; *Carling* v. *Purcell*, 3 Misc. Rep. 55.) The general election laws in force on November 12, 1895 (the date of the election in question), do not apply to an election to determine as to the incorporation of a village. (*Vil. of Harrisville* v. *Lawrence*, 66 Hun, 302.) The election in question was constitutional. (*People* v. *Tuthill*, 31 N. Y. 550; *Ex parte Murphy*, 7 Cow. 153; *People ex rel.* v. *Thornton*, 25 Hun, 456.)

O'BRIEN, J. The questions involved in this appeal arise out of proceedings under the statute to incorporate a new village from parts of two towns in the county of Westchester. The petitioner who brings this appeal was one of the citizens who was opposed to the incorporation of the village, and he claims that the election had or vote taken for the purpose of ascertaining the will of the people residing in the territory proposed to be included in the new village was not in compliance with the statute and, therefore, that no legal expression of their wishes in that regard has ever been had. If he is right in this position the proceedings should have been set aside by the courts below and his appeal to this court should be sustained. The proceedings for the incorporation of villages are regulated and governed by a general law enacted for that purpose. (Laws 1870, chap. 291.) Among other preliminary steps that statute provides for an election at which it shall be determined whether the territory proposed and designated on certain maps required by the act shall be incorporated as a village. Every elector qualified to vote for town officers, residing within the limits of the territory, is entitled to vote at such meeting or election by a ballot having thereon the word "Yes" or the word "No." (§ 9.) The inspectors are then required to

canvass, certify and verify the result, which is to be evidenced by their certificate filed in the county clerk's office. If a majority of the ballots cast at the election have upon them the word "Yes" the territory becomes an incorporated village by the name proposed in the preliminary proceedings unless an appeal is taken to the county judge of the county in which the election was held. The proceedings may be examined on this appeal, and if found to be illegal or irregular, set aside and a new election ordered, but if found to be in conformity with the statute, that fact is to be certified by the judge and the proceedings thereupon stand confirmed. In this case the election was had, the majority of the ballots cast favored the incorporation, the county judge has decided that the proceedings were regular and legal, and his decision has been affirmed at the General Term. The proceeding was brought before the county judge by the appellant, one of the electors who was entitled to vote, and the facts presented by his petition, in compliance with the statute.

There is but one of the many objections against the validity of the election, stated in the petition of the appellant to the county judge, that in our opinion deserves any special notice, and that is the point that the vote was not cast nor the wishes of the electors expressed in the manner now required by law. The statute provides that all laws applicable to town elections and the election of town officers shall apply to meetings or elections held to determine whether territory shall be incorporated into a village, so far as these laws were consistent with the provisions of the act. In this case the electors expressed their will by means of a ballot composed of white paper with the word "Yes" or the word "No" printed upon it, deposited by them in a ballot box, in charge of the inspectors designated by the statute. In 1870, when the statute was passed, no one could doubt, or did doubt, that this method of voting in such a case was a full compliance with the statute, but since that time the method of voting has been radically changed, and the argument in support of this appeal, in substance, is that the statute in question, under which the

vote was taken, has been swept away in the numerous changes since made with respect to the manner of voting at elections. In other words, it is claimed that the citizens residing in any locality who desire to incorporate as a village under the statute cannot legally express their will in that regard in the old-fashioned way, and can now be heard only through the elaborate machinery of official ballots and the complicated laws concerning elections for public officers.

It is quite certain that questions such as the incorporation of a village out of certain territory in a town or county do not fall within the general policy or purpose which dictated the recent changes in the laws governing elections generally. They are not and never were within the range of corruption and the numerous evils stimulated by party politics which were present at the polls on election day and which it was the purpose of the changes in the law to check or suppress. Such questions are mere matters of business and have little more relation to elections proper than the choice of officers in or the management of a private corporation. The policy that found expression in the laws governing public elections and the reasons for surrounding the voter with every possible safeguard against corruption and undue influence have no application to such a question as was submitted to the citizens in this case. The methods prescribed by the act of 1870 for ascertaining the opinion of the electors with respect to the incorporation of a village are so simple and well adapted to the purpose that we should not hold that they have been repealed or superseded by general laws enacted for other purposes and with other objects in mind, unless the language will not admit of any other alternative. There has certainly not been any express repeal of any of the provisions of that statute, and repeals by implication are not favored in such cases. If all the provisions of that statute can stand and have full operation and scope notwithstanding the changes in the election laws, public policy and convenience require that it should be preserved intact. It is only in case it will be found that the election laws by their language and manifest purpose

embrace proceedings for ascertaining the opinion of the electors with reference to the incorporation of a village that we should hold that the later statute repeals the former. These principles of statutory construction are so well settled that authorities need not be cited to sustain them. When both statutes can fairly stand and operate together, each performing an appropriate office, there is no repeal by implication.

The original Ballot Reform Law (Laws 1890, ch. 262) did not work such repeal. (*Village of Harrisville* v. *Lawrence*, 66 Hun, 302.) It is true that since that decision the act has been changed and amended by the use of language of much broader import, but the purpose and intent has not been changed. It is conceded that the election in question was not held in compliance with the General Election Law, nor any other law save the act of 1870, and the only statutory provision that is claimed to bring such questions, when submitted to a vote, within the scope of such laws is § 83 of ch. 810 of the Laws of 1895, amending the act of 1892 and previous election laws. That section reads as follows:

"Whenever the adoption of a constitutional amendment, or any other proposition or question, is to be submitted to the vote of the electors of the state, or of any district thereof, a separate ballot shall be provided by the same officers who are charged by law with the duty of providing the official ballots for candidates for public office," etc.

The vote upon a question to incorporate a village is not one to be submitted to the electors of the state. Nor was the question submitted to the electors of any district thereof within the meaning of the statute. These words are there used in their statutory sense, and only apply when the question is submitted, or to be submitted, in or with respect to some established and recognized political division of the state, organized for some purpose of general or local government — as an assembly or senate district, a judicial or congressional district or the like. The vote in this case was not cast upon a question submitted to the electors of any district of the state, but to

the electors of part of the territory embraced in two towns. That territory was then wholly unorganized for any purpose whatever; had no election machinery of its own and had no actual or political existence, and it depended upon the vote called for by the submission whether it ever could have. It had no boundaries or identity, except in the language of the petition and the general description upon a map for the purpose of the incorporation. It was proposed to erect it into a district, namely, a village which, for certain purposes, would be a political entity or district, but it has not yet reached that stage.

A politically unorganized tract of territory within the limits of two organized towns, such as this was when the question was presented for the opinion of the electors, is not a district of the state within the meaning of the statute, though, of course, it was within the limits of the state. In this case the election was held in two places because the territory embraced parts of two towns. In one of the towns the board of supervisors had adopted what is called Myers' ballot machine as the method of voting at all elections, and it is claimed that the election held in that town was invalid for the additional reason that the machine was ignored and the electors used a paper ballot. The present Constitution confers power upon the legislature to authorize voting by machinery, and towns have been authorized to adopt this machine, and among them one of the towns in question. (Const. art. 2, § 5; Laws of 1894 ch. 764; Laws of 1895, ch. 73.)

It appears that when the machine has once been adopted by the town, under the statute, the voters must use it or not vote at all, as the first section of the act of 1894 reads as follows:

"Such ballot machines shall be used for the purpose of voting for all public officers to be elected by the voters of such towns or cities, or any part thereof, and upon all constitutional amendments, or propositions or questions which may lawfully be submitted to such voters."

It is said that here was a question submitted to a *part of a town*, and, as the machine was not made to speak for the

electors, they have failed to legally express their will by a simple " yes " or " no " printed on white paper. What we have said as to the meaning of the word district, in the General Election Law, applies to this statute also. The words " towns or cities, or any part thereof," do not include a tract of territory in a town, still a part thereof, and not yet organized for any purpose. The words refer to some organized division of a town, city or village, as a ward or an election district. Such divisions are capable of some independent action in matters of this character, and are provided with the necessary official machinery for that purpose. But a separate farm, or a dozen farms, form part of a town in a general sense, though not for the purpose of such action as is contemplated by this statute. So, we think, that these laws did not apply to the election in question, and that the question submitted was legally passed upon by the electors under the provisions of the act of 1870, which still remains unaffected by the changes in the General Election Laws, or the laws requiring town elections to be had by means of the official ballot or ballot machines. The simple provisions of the act of 1870 have not been changed or repealed by the introduction of new methods of voting at general or town elections, or upon questions submitted to the people in regularly organized political divisions of the state.

There was no legal error in the refusal of the county judge to set aside the election, and the order appealed from should, therefore, be affirmed, with costs.

All concur.

Order affirmed.